**IN THE COURT OF APPEALS OF IOWA**

No. 14-1334
Filed August 19, 2015

**RICHARD LADELLE HARRYMAN,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Wapello County, Myron L. Gookin,

Judge.

     Richard Harryman appeals from the denial of his application for

postconviction relief, asserting claims of ineffective assistance of counsel.

**AFFIRMED.**

     Julie De Vries of De Vries Law Office, PLC, Centerville, for appellant.

     Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney

General, and Lisa Moressi, County Attorney, for appellee State.

     Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Richard Harryman appeals from the district court's denial of his application for postconviction relief, asserting claims of ineffective assistance of counsel. We affirm.

### I. Background Facts and Proceedings.

In 2009, law enforcement officers responded to a 9-1-1 call reporting an assault. Specifically, it was alleged Richard Harryman had struck a woman in the nose with his cane. Harryman was subsequently charged with two counts of willful injury; the first count alleged a violation under Iowa Code section 708.4(1) (2009), a class "C" felony, and the second count alleged a violation under section 708.4(2), a class "D" felony. Trial counsel was appointed to represent him thereafter.

By agreement of the parties, the second count of willful injury under Iowa section 708.4(2), along with its lesser-included offenses, were tried to a jury, and the first count was dismissed. At trial, a deputy that responded to the 9-1-1 call testified. At that time, the deputy's father was married to a woman employed by Harryman's appointed trial counsel. Stated another way, Harryman's trial counsel's secretary was the deputy's stepmother. This information did not come up during trial. Ultimately, Harryman was found guilty of the lesser-included offense of assault causing bodily injury.

The victim of Harryman's assault submitted all of her fees from her treatment following the assault to the Iowa Crime Victim Compensation Program (CVCP), and she was reimbursed by the program for those fees. The State sought restitution from Harryman to reimburse the program for the fees it paid to

Harryman's victim of $8300.18. Harryman challenged most of the fees, denying he caused any damage to the victim's nose and asserting the victim just wanted a nose job. Following the restitution hearing, the district court ordered Harryman to pay the challenged fees. The court explained that a jury had heard the evidence, and it found Harryman had assaulted the victim and caused her bodily injury, despite Harryman's testimony to the contrary. The court concluded the evidence established all of the victim's fees were from necessary treatments causally connected to Harryman's assault.

Harryman appealed his conviction and the restitution ruling, but his appeal was later dismissed as frivolous. Thereafter, Harryman filed a pro se application seeking postconviction relief (PCR) on a number of grounds, including alleging his trial counsel was ineffective in a plethora of ways. Concerning his ineffective-assistance-of-counsel claims relevant to this appeal, Harryman contends his trial counsel was ineffective in failing (1) to disclose his conflict of interest stemming from the familial relationship between the deputy and trial counsel's secretary; (2) to present certain medical testimony and evidence of the victim's pre-existing condition; (3) to challenge his denial of his right to a speedy trial; and (4) to object to "leading" testimony by the deputy.

Following a hearing, the PCR court entered its ruling denying Harryman's PCR application. The court found Harryman's trial counsel's representation "was adequate, effective, conscientious, and meaningful, as required by law, on all complaints raised by [Harryman]," and Harryman failed to establish his trial counsel breached its duty in representing him or that he was prejudiced by the breach.

Harryman now appeals, contending the PCR court erred in finding his trial counsel was effective.

## II. Discussion.

Ineffective-assistance-of-counsel claims are analyzed under the familiar two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015); *State v. Ross*, 845 N.W.2d 692, 697-98 (Iowa 2014). To succeed on his ineffective-assistance-of-counsel claims, Harryman must prove both that (1) his counsel failed to perform an essential duty, and (2) he suffered prejudice as a result of his counsel's failure. *Dempsey*, 860 N.W.2d at 868. "Prejudice exists where a claimant proves "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citations and internal quotation marks omitted). Because reversal is only warranted if both prongs of this test are proven by a preponderance of the evidence, *see id.*, we can affirm the PCR court's rejection of Harryman's claims if we determine either prong is absent. *See id.* Our review is de novo. *Id.*

### A. Conflict of Interest.

Harryman asserts the PCR court erred in not finding his trial counsel was ineffective for not obtaining a waiver of a perceived conflict of interest. The Iowa Supreme Court recently revisited our and other court's conflict-of-interest jurisprudence in *State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015). The court reaffirmed that if neither the defendant nor trial counsel raised the conflict-of-interest issue before the trial court, reversal will only be warranted if the defendant shows the conflict had "an adverse effect on counsel's performance,"

even when "the trial court should have known about the conflict" but did not further inquire about the conflict. *Id.*

Here, neither Harryman or his trial counsel raised the conflict-of-interest issue before the trial court, and Harryman has failed to establish the "conflict" had an adverse effect on his trial counsel's performance. Trial counsel testified at the PCR hearing and denied he had a conflict of interest in the case based upon his secretary's relationship to the deputy. He testified there was nothing his secretary did or said that would have changed his opinion relative to his representation of Harryman. Moreover, we agree with the PCR court's assessment:

> Although [Harryman] may genuinely believe he should have been acquitted of any crime, . . . [his trial counsel's] efforts took this case down from an initial charge of a class C forcible felony with a [ten] year unsuspended prison sentence to a conviction for a serious misdemeanor with absolute minimum sentencing.

Harryman did not show his trial counsel had a conflict of interest or that the alleged conflict had an adverse effect on his trial counsel's performance. We therefore affirm on this issue.

### B. Victim's Medical Records.

Harryman also asserts his trial counsel was ineffective for failing to present certain medical testimony at trial and at the restitution hearing concerning the victim and her alleged pre-existing nose condition. However Iowa Code chapter 822, which sets forth postconviction procedures, explicitly prohibits an applicant from challenging in PCR proceedings any "error relating to restitution, court costs, or fees under section 904.702 or chapter 815 or 910." Iowa Code § 822.2(1)(g); *see also State v. Brewer*, 547 N.W.2d 15, 16 (Iowa Ct.

App. 1996) (discussing same general section, then numbered as section 822.2(7)). Instead, "[a]ny alleged errors relating to restitution must be resolved on direct appeal or in a chapter 910 proceeding." *Earnest v. State*, 508 N.W.2d 630, 633 (Iowa 1993).

Harryman petitioned for a restitution hearing pursuant to Iowa Code 910.7, and that court determined all of the victim's fees were from necessary treatments causally connected to Harryman's assault. Harryman appealed the restitution ruling, and our supreme court dismissed the appeal as frivolous. "He cannot now take a second appeal under the guise of [PCR]." *See id.* We therefore affirm on this issue

### C. Speedy Trial.

Harryman next asserts on appeal, pro se, that his trial counsel was ineffective for failing to file a motion to dismiss claiming a speedy-trial violation. Harryman states in his brief that he was arrested on January 29, 2009, and the next day, he "returned to the court for the *initial arraignment*, which started the [ninety] day and [one] year rule." (Emphasis added.) Because his speedy-trial waiver of trial within one year was obtained on March 1, 2010, more than a year after January 30, 2009, Harryman argues his waiver was obtained after the one-year deadline ran in violation of Iowa Rule of Criminal Procedure 2.33(2)(c). However, his terminology is incorrect.

The Iowa Rules of Criminal Procedure set out the procedures and timelines applicable to indictable offenses in Iowa. *See* Iowa R. Crim. P. 2.1(1). After a person is arrested, the arresting officer must take that "person without

unnecessary delay before a committing magistrate as provided" in the rules.

Iowa R. Crim. P. 2.2(1). Furthermore:

> When a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith. If the defendant received a citation or was arrested without a warrant, the magistrate shall . . . make an initial, preliminary determination from the complaint . . . whether there is probable cause to believe that an offense has been committed and that the defendant has committed it. The magistrate's decision in this regard shall be entered in the magistrate's record of the case.

*Id.* This initial hearing, where all of the above takes place, is called an "initial appearance" under the rules. *See id.*

While the complaint filed at the defendant's initial appearance commences a criminal prosecution, that prosecution, where an indictable offense was charged, "must include the filing of an indictment or trial information." *State v. Penn-Kennedy*, 862 N.W.2d 384, 388 (Iowa 2015) (citations omitted). The rules require the indictment or trial information be filed against the defendant within forty-five days of an arrest. *See id.* (quoting Iowa R. Crim. P. 2.33(2)(a)); *see also* Iowa R. Crim. P. 2.5(5) (instructing that the indictment rules apply equally to trial informations, except where stated otherwise).

Unlike the indictment or trial information, a defendant's arraignment is only required to "be conducted as soon as practicable." Iowa R. Crim. P. 2.8(1). If a defendant is represented by an attorney, the defendant may, unless otherwise ordered by the court, waive the formal arraignment hearing "and enter a plea of not guilty by executing and filing a written arraignment." *Id.* Alternatively, an unrepresented defendant must, or represented defendant may by his or her choice, attend the formal arraignment hearing in open court. *Id.* There, the

indictment or information must be read to the defendant or the substance of the charge stated to the defendant, though the defendant may waive the reading. *Id.*; *see also* 4A John Burns, *Iowa Practice Series: Criminal Procedure* § 5:4 (2015 ed.). The defendant is given a copy of the indictment or information, and the defendant is called upon by the court to verify the defendant is charged in his or her correct name and enter his or her plea. *Id.*

Pursuant to rule 2.33(2)(c): "All criminal cases must be brought to trial within one year after the defendant's *initial arraignment* . . . unless an extension is granted by the court, upon a showing of good cause." (Emphasis added.) The term "initial arraignment" in rule 2.33(2)(c) refers only to the arraignment held after the filing of the indictment or information as described in rule 2.8(1). *See State v. Hempton*, 310 N.W.2d 206, 208 (Iowa 1981). Though the word "initial" is used, rule 2.33(2)(c) does not refer to a defendant's initial appearance. *See id.*

Here, Harryman is using the date of his initial appearance as the date of his arraignment.[1] This is incorrect. *See id.* The record shows Harryman was arrested on January 29, 2009, for the crime of assault causing injury. On January 30, 2009, the complaint and supporting affidavit by the deputy was signed by the magistrate, finding probable cause that Harryman committed the charged offense. Although Harryman waived his time to answer and entered a plea of not guilty at the initial appearance, this does not transform the initial

---

[1] It is apparent to us that the source of Harryman's belief is the form he signed at his initial appearance on January 30, 2009. At the top of the form it states: STATEMENT OF RIGHTS AT *INITIAL ARRAIGNMENT*." (Emphasis added.) But, we note, the next line of the form states: "PURPOSE OF YOUR FIRST APPEARANCE BEFORE THE COURT."

appearance into an arraignment; no indictment or trial information had been filed against Harryman at the time of his initial appearance.

On March 9, 2009, within forty-five days of Harryman's arrest, the State filed its first trial information charging Harryman with the indictable offense of willful injury. The same day, the district court approved the information and its minutes of testimony, and it set the date of Harryman's arraignment for March 23, 2009. Harryman was subsequently appointed counsel, and on the day of the arraignment, Harryman filed a written arraignment, signed by Harryman and his first-appointed trial counsel, and notarized. The written arraignment stated, among other things, that Harryman was entering a plea of not guilty and was waiving his right to a speedy trial within ninety days. The same day, the district court entered an order noting Harryman's written arraignment and waiver, and it set dates for a pre-trial conference and trial.

On March 1, 2010, Harryman filed a waiver of his right to a speedy trial within one year of the written arraignment. The waiver was signed by Harryman and his attorney.

Because Harryman's waiver was filed within one year of the date of his "initial arraignment," there was no speedy-trial violation. Trial counsel has no duty to raise an issue that has no merit. *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011) (declining to find counsel incompetent for failing to pursue a meritless issue). Consequently, Harryman cannot establish his trial counsel was ineffective, and we affirm on this issue.

### D.  Officer's Testimony.

Finally, Harryman contends on appeal, pro se, his trial counsel was ineffective for failing "to object to certain prejudicial testimony that established [Harryman's] propensity to commit the crimes charged."  He asserts this matter was preserved for our review because he filed a timely notice of appeal and the PCR court "ruled on the matter of ineffective assistance."  We disagree.

First of all, filing a timely notice of appeal does not preserve error.  "While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation."  Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) (footnote omitted) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court").  Secondly, as best we can discern from Harryman's PCR application and amended application, the specific issue now asserted on appeal was not raised before the PCR court.  Furthermore, although the PCR court ruled on the ineffective-assistance-of-counsel issues presented to it, the court did not rule on the specific issue now raised on appeal.  It is axiomatic under our error-preservation rules that an issue must not only be raised before the district court, it must also be ruled on before we will decide it on appeal.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).  Furthermore, Iowa Code section 822.8 provides, with respect to PCR applications: "All grounds for relief available to an applicant under this chapter must be raised in the applicant's original, supplemental or amended application."  Nevertheless, an applicant may raise an

ineffective-assistance-of-PCR-counsel claim on appeal from the denial of a PCR application. *See Dunbar v. State*, 515 N.W.2d 12, 15-16 (Iowa 1994). But here, Harryman makes no such allegation of ineffective assistance by his PCR counsel.

Bypassing this error preservation concern in an effort to stave off another potential PCR proceeding, *see State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing an error-preservation problem and proceeding to the merits of the appeal), we conclude Harryman cannot demonstrate the requisite prejudice. Harryman asserts the State asked the deputy leading questions that "were designed to place in the minds of the fact finder that [Harryman] admitted guilt to [the deputy]," and his trial counsel should have objected to those questions. Even assuming without deciding the State asked the deputy a few leading questions and the objections would have been sustained, the deputy had already provided the same substantive testimony. Additionally, Harryman's counsel cross-examined the deputy and ultimately elicited the same testimony from him in clarifying and calling in to question the deputy's memory. Moreover, the jury was able to listen to the victim's testimony, and it saw photos of her substantial nasal injury and blood at the scene. Harryman has not shown the result of the proceeding would have been different had his trial counsel objected to the complained-of questions. *See State v. Pierson*, 554 N.W.2d 555, 562 (Iowa Ct. App. 1996) (noting counsel need not make every possible evidentiary objection to satisfy standard of normal competency). Accordingly we affirm on this issue.

***III.  Conclusion.***

Because we conclude Harryman failed to establish his trial counsel rendered ineffective assistance, we affirm the PCR court's ruling denying and dismissing Harryman's PCR application.

**AFFIRMED.**